USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:________________
DATE FILED: 7/29/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

9 KINGS HONG KONG LIMITED,

Petitioner, Cross-Respondent

-against-

THE AMBR GROUP,

Respondent, Cross-Petitioner.

1:24-mc-00211 (MKV)

**OPINION AND ORDER DENYING MOTION TO VACATE AND GRANTING PETITION TO CONFIRM ARBITRATION AWARD**

MARY KAY VYSKOCIL, United States District Judge:

Petitioner 9 Kings Hong Kong Ltd. ("9 Kings") filed a petition to confirm an arbitration award [ECF No. 8 ("Petition")], attaching, *inter alia*, a Term Sheet Regarding Sourcing Agreement [ECF No. 8-1 ("Term Sheet")] and the Final Arbitration Award [ECF No. 8-3 ("Arbitration Award")]. The Petition is supported by Petitioner's memorandum of law [ECF No. 5 ("Pet. Mem.")], its reply memorandum of law [ECF No. 23 ("Pet. Reply")], and the declarations of Timothy Bryant [ECF No. 24 ("Bryant Decl.")] and Nicholas Maftus [(EFC No. 25 ("Maftus Decl.")].

Respondent The Ambr Group ("Ambr") filed an answer and cross-petition to vacate the arbitration award. [ECF No. 13 (the "Cross-Petition")]. The Cross-Petition is supported by a memorandum of law [ECF No. 16 ("Resp. Mem.")]; the declarations of James O'Brien [ECF No. 17 ("O'Brien Decl.")], Mohammed Usman [ECF No. 18 ("Usman Decl.")], Hamza Ramzan [ECF No. 19 ("Ramzan Decl.")], and Bilal Qader [ECF No. 20 ("Qader Decl.")]; Respondent's reply memorandum of law [ECF No. 26 ("Resp. Reply")]; and the further declarations of Mohammed Usman [ECF No. 27 (the "Further Usman Decl.") and James O'Brien [ECF No. 28 (the "Further

O'Brien Decl."). With the Court's authorization [ECF No. 30], Petitioner opposed the Cross-Petition in a memorandum of law labeled as a sur-reply [ECF No. 32 ("Pet. Sur-reply")]. Petitioner also answered the Cross-Petition. [ECF No. 22].

For the reasons set forth below, 9 Kings' petition to confirm the arbitration award is GRANTED, and Ambr's cross-petition to vacate is DENIED.

**BACKGROUND**

Petitioner 9 Kings is a product sourcing business. Pet. Mem. 1; Maftus Decl. ¶ 2. Petitioner helps its clients "locate sources for products and supplies around the world." Pet. Mem. 1.[1]

Respondent Ambr was formerly known as D1 Brands. Resp. Mem. 3; Cross-Petition ¶ 6. D1 Brands was a consumer retail company that purchased direct-to-consumer brands and private labels and sold products from those brands and labels on Amazon. Resp. Mem. 3; Pet. Mem. 1. In 2023, D1 merged with Suma Brands, Inc., a "platform for acquiring and scaling Amazon FBA (fulfillment by Amazon) businesses," to form The Ambr Group. Resp. Mem. 3. Ambr focuses its business on acquiring and growing Amazon consumer retail businesses. *Id.*

In 2022, Mohammed Usman, co-founder of D1 Brands and current head of procurement for Ambr, was introduced to Nicholas Maftus, the CEO of 9 Kings. *See* Usman Decl. ¶ 4. The parties agreed that 9 Kings would source cost-friendly products for Ambr, and 9 Kings began to source and provide products while the parties negotiated the Term Sheet. *See* Usman Decl. ¶¶ 5–6; Maftus Decl. ¶¶ 3, 6.

[1] The Court draws the relevant facts and materials from each party's submission on the pending petition and motions, except to the extent disputed.

Petitioner and Respondent entered into the Term Sheet on January 14, 2023, effective January 1, 2023. Term Sheet; *see also* Maftus Decl. ¶ 4; Usman Decl. ¶ 6. The Term Sheet contains an arbitration provision which provides, in relevant part:

> In the event of any dispute, controversy or claim arising out of (or relating to) this Term Sheet, the Sourcing Agreement or the purchase and sale of Products hereunder or thereunder, and if such dispute is not resolved by the parties within 30 days of either party sending written notice of such dispute to the other party, then either party may at any time thereafter (provided such dispute has not been resolved) refer such dispute for final resolution by arbitration administered by the American Arbitration Association in accordance with its then current Commercial Arbitration Rules (the "Rules") in New York City, New York . . . . The parties agree that such arbitration shall be the exclusive means of resolving disputes in connection with this Term Sheet, provided however that any arbitration award may be enforced by any court with appropriate jurisdiction.

Term Sheet ¶ 14.

Petitioner commenced an arbitration proceeding with the American Arbitration Association ("AAA") on or about September 6, 2023, for non-payment of goods and breach of contract. Pet. Mem. 2. Respondent did not attend the proceeding or file a response. Resp. Mem. 2. Respondent claims that "Ambr did not appear in the Arbitration because it did not receive notice of the hearing or related deadlines." Resp. Mem. 2. An award of $339,033.49 (the "Award") was rendered in favor of Petitioner on March 20, 2024. Arbitration Award at 8; *see also* Pet. Mem. 2; Resp. Mem. 2.

Rule 4(b)(iii) of the Commercial Arbitration Rules provides that service of process can be made at a party's "last known address" or by email if the party being served consents to receive service by email. AAA Rule R-4(b)(iii); *see also* Resp. Mem. 1, 7–9 (quoting AAA Rule R-4(b)(iii)(a)).

Timothy Bryant, the lawyer for 9 Kings, provided the AAA with 54 W 21st Street in Manhattan as Ambr's address based on a Google search. Bryant Decl. ¶ 2. Respondent claims that "[n]either D1 nor Ambr ever maintained an office [at that address]." Resp. Mem. 4. Respondent further claims that Petitioner "sandbagged" Respondent by providing the AAA with a "bogus" address that Petitioner knew would not result in notice. Resp. Mem. 9. More specifically, Respondent argues that Petitioner knew that this was not Respondent's address since Petitioner and Respondent had never corresponded at this address but rather at a different address in Brooklyn where Respondent maintained an office. *See* Resp. Mem. 3–4; Resp. Reply 2. Respondent also points to other addresses that Petitioner knew of, such as a warehouse location listed on the Term Sheet and an address in Minnesota that Ambr lists online as its headquarters. *See* Resp. Mem. 3–4. Respondent contends, as such, that the address provided based on the Google search violated the Commercial Arbitration Rules by not being Ambr's "last known address." Resp. Mem. 7; *see also* Resp. Reply 2–3.

In addition to service by mail, Petitioner provided the AAA with the email addresses of Hamza Ramzan, co-founder of D1 Brands and a signatory on the Term Sheet, and Bilal Qader, a contractor for Ambr. *See* Resp. Mem. 4; Pet. Reply. 2; Term Sheet 12. Respondent argues that Rule 4(b)(iii)(b) of the Commercial Arbitration Rules requires consent to receive service via email, which was not given by Respondent. *See* Resp. Mem. 9. In an email from Mr. O'Brien, Respondent's counsel, to Petitioner's counsel on April 3, 2024, O'Brien stated that Qader was "not an employee but a contractor located in Pakistan, and Hamza Ramzan never received any notice." Bryant Decl. ¶ 4. Respondent has updated its position and now claims that emails sent by the AAA went to the spam folders of both Qader and Ramzan and that neither received notice of the proceeding. *See* Ramzan Decl. ¶ 11; Qader Decl. ¶¶ 7, 9.

Petitioner questioned these claims and asked for "screenshots of emails caught in spam filters with metadata demonstrating when and where emails were received and opened," which Respondent did not provide. Pet. Reply 5. To supplement the emails sent by the AAA, Mr. Bryant also personally "sent Respondent notifications and documentation relating to the arbitration via emails to Bilal Qader and Hamza Ramzan" leading up to the proceeding, which Respondent did not address. Bryant Decl. ¶ 3; *cf.* Ramzan Decl.; Qader Decl.

In addition to the notice arguments, Respondent argues that the arbitrator adjudicated issues outside the scope of the arbitration agreement by "resolving an issue of outstanding payment that arose prior to the agreement to arbitrate." Resp. Mem. 11. Specifically, Respondent argues that part of the Award was based on an invoice from October 22, 2022 (the "2022 Invoice"), which "predated the execution of the Term Sheet, with its arbitration agreement, by over two months." Resp. Mem. 11; *see also* Arbitration Award 4 (discussing and awarding damages for an unpaid invoice for $137,120.00 from October 22, 2022).

## LEGAL STANDARD

The confirmation of an arbitration award is a summary proceeding. *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007). The burden to avoid an arbitration award is on the party seeking to vacate, and the burden is high. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("The showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof.") (citations omitted). The Petitioner's burden is therefore "not an onerous one," while the burden on the party opposing confirmation of the award is "very high." *N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Constr. Grp.*, LLC, 2009 WL 256009, at *1 (S.D.N.Y. Feb. 3, 2009); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (noting that courts cannot review merits of arbitration awards).

Judicial review of arbitration awards is "severely limited, so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (quotations and citations omitted). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting *Eastern Assoc. Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000)). The Second Circuit has underscored that courts should exercise an "extremely deferential standard" when reviewing arbitration awards. *Porzig v. Dresdner, Kleinwort, Benson, N. America LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (noting that arbitration awards are entitled to great deference). Thus, upon review "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

**A. Vacatur on Grounds of Improper Notice**

In light of this strong policy favoring arbitration, Section 10(a)(3) of the Federal Arbitration Act ("FAA") provides severely limited grounds for vacatur of an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Improper notice can be grounds for vacatur of an arbitration award under this provision if such lack of notice rendered the hearing "fundamentally [un]fair." *Kaplan v. Dunhill, Inc.*, No. 960258,

1996 WL 640901, at *5 (S.D.N.Y. Nov. 4, 1996) (quoting *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir. 1974)).

However, courts in this District have recognized that if a party receives actual notice, technical noncompliance with the Commercial Arbitration Rules or other arbitration service rules cannot be grounds for vacatur on the ground of fundamental fairness. *See, e.g.*, *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 446 (S.D.N.Y. 2005) ("[I]n light of the strong policy favoring arbitration and undisputed proof that [petitioner] had notice of the arbitration, the award will not be disturbed on the ground that a suite number was missing from a mailing address or that a notice was not sent by certified or registered mail"); *Gill v. Fin. Indus. Regul. Auth.*, No. 11-cv-2713 (PAC) (RLE), 2013 WL 1203746, at *4 (S.D.N.Y. Mar. 6, 2013) ("In any case, [petitioner's] arguments concerning the form of mailing are not relevant because the Parties agree that he received ***actual*** notice of the arbitration proceedings" despite his argument that respondent "failed to send proper notice in the form of personal service, registered mail, or certified mail."), *report and recommendation adopted*, 2013 WL 1201499 (S.D.N.Y. Mar. 25, 2013); *Bell Aerospace*, 500 F.2d at 923.

**B. Vacatur on Grounds of Temporal Scope**

Section 10(a)(4) of the FAA provides that an award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "[A]n arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011). "It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute

to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (cleaned up, quotations omitted). Because "[a]rbitration is strictly a matter of consent[,] [a] court may only compel arbitration where it is satisfied that" the "applicability [of the arbitration agreement] to the dispute is [not] in issue." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023) (quotations and citations omitted).

## DISCUSSION

Ambr challenges the Award on two grounds: First, Ambr claims that it did not receive proper notice of the arbitration proceeding, and second, Ambr claims that the arbitrator did not have the authority to render an award for the 2022 Invoice. Resp. Mem. 1, 6–11. Neither argument warrants vacatur of the Award.

### I. AMBR HAS NOT MET ITS BURDEN TO SHOW IT LACKED ACTUAL NOTICE OF THE ARBITRATION PROCEEDING[2]

As a threshold matter, the Court notes that technical noncompliance with the Commercial Arbitration Rules is insufficient for vacatur if a party has actual notice. *See, e.g.*, *Smith*, 419 F. Supp. 2d at 446 (S.D.N.Y. 2005); *Bell Aerospace*, 500 F.2d at 923 (providing the "fundamentally fair hearing" standard). Respondent argues at length about Petitioner's noncompliance with the Commercial Arbitration Rules. *See* Resp. Mem. 1, 3, 7–9, Resp. Reply 1–4. Specifically, Respondent repeatedly notes that Petitioner did not obtain Respondent's consent to be served by email as required by the Commercial Arbitration Rules and did not send service to Ambr's "last known address" within the meaning of such rules. Resp. Mem. 1, 3, 7–9, Resp. Reply 1–4. These arguments do not provide grounds for vacatur. *See Marsillo v. Geniton*, No. 03-cv-2117 (TPG),

[2] The Court does not rely, one way or the other, upon the contested suggestion that Mr. O'Brien waived this argument in a phone call between counsel and thus declines to resolve that dispute. *See* Bryant Decl. ¶ 8.d.; Further O'Brien Decl. ¶¶ 2–3.

2004 WL 1207925, at *6 (S.D.N.Y. June 1, 2004) ("[Respondent]'s claim that NASD Dispute Resolution failed to send proper notice of the hearings in the form of personal service, registered mail or certified mail, is insufficient by itself to provide a basis for vacating the arbitration award"); *Smith*, 419 F. Supp. 2d at 446 (S.D.N.Y. 2005). Moreover, given the "extremely deferential standard" when reviewing arbitration awards, the Court will defer to the arbitrator's construction of the parties' compliance with the Commercial Arbitration Rules and will not disturb the award on these grounds. *Porzig*, 497 F.3d at 139; *cf.* Arbitration Award at 2 (describing the methods by which Respondent was served and noting no issues with such service). Nonetheless, the Court has considered the question of whether Petitioner received actual notice of the arbitration proceeding, *see Marsillo*, 2004 WL 1207925, at *6, and finds that Respondent has not met its burden of proof for vacatur. *Willemijn Houdstermaatschappij,* 103 F.3d at 12.

**A. Notice by Email**

"New York law . . . contains a presumption that a party has received an email when it is delivered to the party's email address in accordance with regular office procedures." *Lockette v. Morgan Stanley*, No. 18-cv-876 (JGK), 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018). As the party seeking to vacate the award, Respondent bears the burden of rebutting this presumption and proving that it did not receive actual notice by email. *See Willemijn Houdstermaatschappij, BV*, 103 F.3d at 12.

While the AAA sent email notices to both Mr. Ramzan and Mr. Qader, both Mr. Ramzan and Mr. Qader claim the notices were sent to their spam folder and that neither had notice about the proceeding. *See* Ramzan Decl. ¶ 11; Qader Decl. ¶ 7. Mr. Ramzan and Mr. Qader do not provide any metadata or other documentary evidence to prove that the emails went to their spam

folder or that Mr. Ramzan and Mr. Qader did not open the emails until after the proceeding, despite Respondent's request for this evidence. *Cf.* Pet. Reply 5; Ramzan Decl.; Qader Decl.

More glaring, however, is the fact that Mr. Bryant sent email notices to Mr. Ramzan and Mr. Qader—both a demand letter before initiating the proceeding and multiple notices once the proceeding was initiated. *See* Bryant Decl. ¶¶ 3–4; Pet. Reply 2. Neither Mr. Ramzan nor Mr. Qader address what happened to the emails sent by Mr. Bryant. *See* Ramzan Decl.; Qader Decl.

By failing to address Mr. Bryant's emails, Respondent fails to defeat the presumption of email receipt.[3] *See* Ramzan Decl.; Qader Decl. Nor does Respondent defeat the presumption with respect to the AAA's emails, as "mere denial of a receipt of an email is insufficient." *Lockette*, 2018 WL 4778920, at *4; *cf.* Ramzan Decl. ¶ 11; Qader Decl. ¶ 7. As such, the Court holds that Respondent has not proved lack of actual notice by email.

**B. Notice by Mail**

With respect to the mailing address that Petitioner provided, Respondent claims Petitioner knew D1's correct office address because 9 Kings had mailed its invoices to that address and met with Respondent's personnel there. *See* Resp. Mem. 3–4. Respondent further claims that it never maintained an office at the address given by Petitioner and that Petitioner never corresponded with Respondent there. *See* Resp. Mem. 3–4. Respondent asserts that in providing the wrong address,

[3] The party seeking to vacate an arbitration award bears the burden of proof. *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 12. The exact evidentiary standard that party must meet when seeking vacatur on grounds of a fundamentally unfair hearing is not clear. *See Bell Aerospace*, 500 F.2d at 923 (holding that an arbitrator must provide a "fundamentally fair hearing" but expressing no evidentiary standard for vacatur on these grounds); *Kaplan*, 1996 WL 640901 (S.D.N.Y. Nov. 4, 1996) (expanding the "fundamentally fair hearing" standard to issues of notice but similarly providing no evidentiary standard). However, since Respondent bears the burden of proof yet provides no evidence to defeat the presumption of receipt of Mr. Bryant's emails, Respondent would not be able to meet any evidentiary standard on this matter. *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (holding that when a party bears the burden of proof and fails to submit any evidence as to an essential element of that party's case, there can be no genuine issue of material fact).

"the only logical conclusion to be drawn is that 9Kings deliberately sandbagged Ambr by providing the AAA with a bogus address." Resp. Mem. 8. But this is not "the only logical conclusion to be drawn." *Id.* Mr. Bryant, outside counsel for Petitioner 9 Kings, supplied this address to the AAA and found it based on a Google search where 54 W 21st Street appeared as the address for The Ambr Group. *See* Bryant Decl. ¶¶ 2–3 (showing a screenshot of the Google search).

The parties dispute whether notice occurred via the 54 W 21st Street address. Respondent denies that Ambr as an entity had any relationship with 54 W 21st Street or ever maintained it as an address. *See* Resp. Mem. 3–4, 7–8; Resp. Reply 2–4. But this does not mean that notice could not have occurred via this address. Indeed, as Respondent acknowledges, this "was an address used by another company owned by one of the founders of Suma," Resp. Mem. 8, which acquired D1 Brands to form The Ambr Group in May 2023. Usman Decl. ¶ 7. But Respondent never explains the full nature of that founder's relationship with 54 W 21st Street, instead merely claiming that neither Ambr nor D1 Brands were located there and vaguely disputing the provenance of the Google result. *See* Further Usman Decl. ¶¶ 4–5; Further O'Brien Decl. ¶ 5; Resp. Reply at 4. Indeed, Petitioner contests Respondent's claims heavily, maintaining that Respondent did receive the notices at the 54 W 21st Street address. Pet. Sur-reply 2.

Because Respondent's arguments on this score are not directed towards the issue of actual notice, they present no basis to disturb the Award. *See, e.g.*, *Smith*, 419 F. Supp. 2d at 446; *Gill*, 2013 WL 1203746, at *4, *report and recommendation adopted*, 2013 WL 1201499; *Bell Aerospace*, 500 F.2d at 923. In any event, the Court has already found that Respondent failed to prove lack of actual notice by email, effectively mooting the issue with respect to mail.

## II. THE DISPUTE REGARDING THE 2022 INVOICE DID NOT FALL OUTSIDE THE SCOPE OF THE AGREEMENT

Respondent also seeks to vacate the Award under Section 10(a)(4) of the FAA on the basis that the 2022 Invoice was due before the Term Sheet was signed, rendering that portion of the Award beyond the scope of the parties' agreement. Resp. Mem. 5–6.

Again, the Term Sheet provides:

> In the event of ***any*** dispute, controversy or claim arising out of (***or relating to***) ***this Term Sheet***, the Sourcing Agreement ***or the purchase and sale of Products hereunder*** or thereunder, . . . either party may . . . refer such dispute for final resolution by arbitration . . . . The parties agree that such arbitration shall be the exclusive means of resolving disputes in connection with this Term Sheet . . . .

Term Sheet ¶ 14 (emphases added).

"The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate." *Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, No. 15-CV-9605 (KBF), 2016 WL 11795816, at *2 (S.D.N.Y. Feb. 3, 2016) (citing *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98–99 (2d Cir. 1999); *Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 481–82 (2d Cir. 2011) (summary order); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010)).

In noting this line of authority, the Court is cognizant that, "insofar as *Smith/Enron* relied on a '"presumption of arbitrability" that can "only [be] overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,"' it 'cannot be good law.'" *1199 SEIU United Healthcare Workers E. v. Chinese-Am. Plan. Council Home Attendant Program*, No. 21-631, 2026 WL 1993408, at *22 n.40 (2d Cir. July

10, 2026) (quoting *Niagara Mohawk*, 67 F.4th at 114 (quoting *Smith/Enron*, 198 F.3d at 99)). Accordingly, the Court is careful to observe the precept that "courts may invoke a presumption of arbitrability only where the parties' dispute concerns a valid and enforceable agreement to arbitrate that is ambiguous as to its scope." *Niagara Mohawk*, 67 F.4th at 113.

No such presumption is required here.[4] The Term Sheet contemplates arbitration of "any dispute, controversy or claim . . . relating to[ the] Term Sheet . . . or the purchase and sale of Products [t]hereunder." Term Sheet ¶ 14. This provision is "clear on its face." *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972) ("It reads 'any controversy' between members. . . . Had those who drafted the clause intended otherwise they doubtless would have used language plainly stating . . . 'any future controversy' or any controversy between members 'arising after both parties to the dispute have become' members.").[5] The dispute over the 2022 Invoice is clearly a dispute that relates to the purchase and sale of products under the Term Sheet. *See* Maftus Decl. ¶ 6–8 (describing the provision of "various products and components" both "[p]rior to and after execution of the Term Sheet" and repeated attempts resolve nonpayment of the 2022 Invoice, all of which occurred in 2023); Term Sheet at 10 ("[I]n the event the parties proceed with any activities related to the production of Products prior to execution of the final Sourcing Agreement, the terms and provisions of this Term Sheet shall be binding on the parties until such time as the final Sourcing Agreement has been fully signed . . . .").

---

[4] Petitioner is wrong to suggest that the Court may not question whether the arbitrator "got it right" with respect to the scope of the parties' arbitration agreement. Pet. Reply at 8 (quoting *Jock*, 646 F.3d at 123). Such deference is reserved for situations "when the question has been properly submitted to the arbitrator and neither the law nor the agreement categorically bar her from deciding that issue." *Jock*, 646 F.3d at 123; *see also Granite Rock*, 561 U.S. at 296 ("It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." (cleaned up, quotations omitted)).

[5] The Court is unpersuaded by Respondent's contrary citations to the decades-old district court decision *Church v. Gruntal & Co.*, 698 F. Supp. 465, 496 (S.D.N.Y. 1988). *See* Resp. Mem. at 11; Resp. Reply at 6–7.

As such, the Court finds that the arbitrator acted within his scope in rendering an award for nonpayment of the 2022 Invoice.

**CONCLUSION**

Having considered Petitioner's arguments for vacating the Award, the Court finds them to be without merit. Accordingly, the Petition [ECF No. 1] to Confirm Arbitration Award and Enter Judgment is GRANTED, and the Motion to Vacate Arbitration Award [ECF No. 13] is DENIED. The Clerk of the Court respectfully is requested to close the motion at ECF No. 1 and to terminate the case.

**SO ORDERED.**

**Date: July 29, 2026**
**New York, NY**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**